*United States v. Marinello*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2015

(Argued:  February 11, 2016    Decided:  October 14, 2016)

Docket No. 15-2224

---

UNITED STATES OF AMERICA,
*Appellee*,

v.

CARLO J. MARINELLO, II,
*Defendant–Appellant*.

---

Before:        POOLER and SACK, *Circuit Judges*, and FAILLA, *District Judge*.[*]

Defendant-appellant Carlo J. Marinello, II appeals from an amended judgment of conviction entered against him on July 14, 2015 by the United States District Court for the Western District of New York (William M. Skretny, *J.*).  One of the counts of conviction alleged a violation of 26 U.S.C. § 7212(a)'s "omnibus clause," which criminally penalizes one who "corruptly . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of" the Internal Revenue Code in ways not addressed by other specific provisions of the statute.

---

[*]Judge Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

The district court denied Marinello's motion for an acquittal or a new trial on this count, concluding that the government was not required to establish a pending Internal Revenue Service action and a defendant's knowledge thereof as part of its burden of proof.  We agree and conclude that these criteria are not offense elements under the omnibus clause.  We further conclude that a violation of this provision may be predicated on an omission, and that the district court did not procedurally err in determining Marinello's sentence.  The judgment of the district court is therefore:

AFFIRMED.

JOSEPH M. LATONA, Buffalo, NY, *for Defendant–Appellant*.

RUSSELL T. IPPOLITO, JR., Assistant United States Attorney, Buffalo, NY, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, *Appellee*.

SACK, *Circuit Judge*:

Defendant-appellant Carlo J. Marinello, II, a resident of Erie County in western New York State, owned and operated a freight service that couriered items to and from the United States and Canada. From approximately 1992 through 2010, Marinello neither kept corporate books or records nor filed personal or corporate income tax returns. Following an investigation by the Internal Revenue Service (the "IRS"), he was indicted by a grand jury sitting in the United States District Court for the Western District of New York on nine counts of tax-related offenses that allegedly occurred from 2005 through 2009. A jury found him guilty on all counts. He was sentenced to thirty-six months' imprisonment and one year of supervised release, and ordered to pay $351,763.08 to the IRS in restitution.

Under one of the counts of conviction, Marinello was charged with violating 26 U.S.C. § 7212(a). One portion of the statute imposes criminal liability on one who "corruptly or by force or threats of force . . . endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title" (i.e., the Internal Revenue Code). *Id.* Another portion, often referred to as the "omnibus clause," imposes criminal liability on one who "in any other way corruptly . . . obstructs or impedes, or endeavors to obstruct or

impede, the due administration of this title." *Id.* Marinello was charged with violating the omnibus clause.

On appeal, Marinello principally argues that we, like the Sixth Circuit addressing the same issue, should construe the phrase "the due administration of this title" in the omnibus clause to include only a pending IRS action of which a defendant was aware. He contends that his conviction under section 7212(a) cannot stand under this construction because the government offered no evidence at trial that he knew of a pending IRS investigation against him at the time of the actions on which the conviction was based. He also argues that a conviction under the omnibus clause cannot be premised on a defendant's omission, as it may have been in the case at bar, and that the district court committed procedural error during the sentencing proceedings.

We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and affirm Marinello's conviction and sentence.

## BACKGROUND

*Factual Background*

In 1990, Marinello incorporated Express Courier Group/Buffalo, Inc. ("Express Courier"), a New York corporation. Express Courier maintained a

freight service that couriered documents and packages between the United States and Canada. Despite owning and managing the company, Marinello maintained little documentation of his business income or expenses. He shredded or discarded most of the business's records, including bank account statements, employee work statements, gas receipts, and bills. Marinello paid his employees in cash and did not issue them (or himself) tax documents such as familiar Form 1099s or Form W-2s. He often used Express Courier's funds for personal purposes, including mortgage payments on his residence (made indirectly through weekly cash contributions to his wife) and monthly payments to his mother's senior living center.

In December 2004, the IRS received an anonymous letter purporting to outline some of Marinello's business practices and accusing him of tax evasion. IRS Special Agent Angela Klimczak was assigned to investigate those allegations. Upon reviewing its own records, the IRS discovered that, from at least 1992 onward, Marinello failed to file personal or corporate income tax returns. Ultimately, Agent Klimczak recommended that the investigation be closed because the IRS could not at that time determine whether the unreported income was significant. Marinello had no knowledge of this investigation.

In 2005, Marinello sought the advice of counsel, whom he informed of his failure to file his tax returns. Counsel told Marinello that this failure to file was improper and referred him to an accounting firm for a consultation. Allan Wiegley, a certified public accountant at that firm, told Marinello that he needed to provide records of business receipts and expenses in order to pay corporate taxes with respect to Express Courier and its business. Marinello was unable to do so: He had destroyed or failed to keep the documents.

Marinello met with Wiegley again the following year to discuss a different matter. During the meeting, Marinello stated that he had made no progress in gathering Express Courier's business records. Wiegley declined to enter into a contract to perform accounting services for Express Courier or Marinello because there was inadequate documentation for him to prepare a corporate tax return. Despite the advice from counsel and two meetings with Wiegley, Marinello did not begin maintaining books and records for Express Courier.

In each of the years 2005 through 2008, Express Courier had generated annual total gross receipts of between $200,718.88 and $445,184. During each of those years, Marinello took approximately $26,000 to $50,000 from Express Courier's business account and spent it in payment of his personal expenses.

The IRS re-opened its investigation of Marinello in 2009. On June 1, 2009, Agent Klimczak conducted an interview of Marinello at his home. He told her that he could not recall the last time he had filed an income tax return. He initially maintained that he did not file tax returns because he thought they were not required for persons who made less than $1,000 per year. He eventually admitted that he had earned more than that amount annually and should have paid taxes, but "never got around to it." Testimony of Angela Klimczak, August 6, 2014, Trial Transcript ("Trial Tr.") at 172 (App'x 181). He stated that he used business income (by cashing checks from Express Courier's customers and depositing a portion of them into his personal bank account) as well as his business bank account to pay for personal expenses. He confirmed that he shredded bank statements and that he did not keep track of Express Courier's income or expenses. He also remembered telling an accountant that he shredded most of his business records. Marinello explained that he destroyed these

documents because "that's what [he had] been doing all along" and that he "took the easy way out." *Id.* at 194 (App'x 203).

### Procedural History

On October 16, 2012, in the United States District Court for the Western District of New York, Marinello was charged in a superseding indictment with corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, in violation of 26 U.S.C. § 7212(a) (Count One), and willfully failing to file individual and corporate tax returns for calendar years 2005 through 2008, in violation of 26 U.S.C. § 7203 (Counts Two through Nine). Count One alleged that Marinello had violated section 7212(a) by, "among other thing[s]":

> (1) failing to maintain corporate books and records for [Express Courier] of which the defendant was an employee, officer, owner and operator;
>
> (2) failing to provide the defendant's accountant with complete and accurate information related to the defendant's personal income and the income of Express Courier;
>
> (3) destroying, shredding and discarding business records of Express Courier;
>
> (4) cashing business checks received by Express Courier for services rendered;

8

(5) hiding income earned by Express Courier in personal and other non-business bank accounts;

(6) transferring assets to a nominee;

(7) paying employees of Express Courier with cash; and

(8) using business receipts and money from business accounts to pay personal expenses, including the mortgage for the residence in which the defendant resided and expenses related to the defendant's mother's care at a senior living center.

Superseding Indictment, dated October 16, 2012, at 1-2 (App'x 75-76) (formatting altered).[1]

Before trial, Marinello sought an instruction that "the jury . . . be unanimous on at least one of the means under which the government . . . alleged [that] [he] ha[d] violated [title 26 section 7212(a)]" in order to convict him of that offense. Defendant's Requested Jury Instruction, dated September 25, 2012, at 1 (App'x 41). If any juror harbored a reasonable doubt on any one of the means alleged, the instruction required an acquittal on Count One. *Id.* The government

---

[1] The original indictment alleged a ninth means of corrupt obstruction under Count One: "failing to file with the [IRS] personal income tax returns and corporate tax returns for Express Courier." Indictment, dated February 14, 2012, at 2 (App'x 25). In response to Marinello's motion to strike this allegation as duplicitous of the remaining counts of the indictment, the government filed the superseding indictment, which removed it.

opposed this proposal as a misstatement of the law, contending that it was not required to prove all of the means specified in Count One.

At a pre-trial conference, the district court (William M. Skretny, *Judge*) reserved ruling on the proposed jury instruction until trial. During that conference, Marinello's counsel represented that there was "no question [that Marinello] did not file his tax returns, corporate and personal," and that he had advised Marinello "to take a plea" to Counts Two through Nine. *See* Transcript of pre-trial conference, October 4, 2012, at 2 (App'x 60). But Marinello declined to plead guilty to Count One, a felony. App'x 60-61.

Marinello subsequently moved for submission to the jury of a special verdict form requiring the jury to indicate whether it found him guilty or not guilty regarding each of the eight means of violating section 7212(a) alleged in Count One of the superseding indictment. By text order, the district court deferred ruling on this request until trial.

At trial, defense counsel conceded that Marinello did not file his tax returns[2] but argued that Marinello could not be convicted on Count One because

---

[2] The parties further stipulated that Marinello did not file with the IRS personal tax returns or corporate tax returns for Express Courier for tax periods 1992 through 2010. August 6, 2014 Trial Tr. at 64 (App'x 140).

10

he lacked the requisite criminal intent under section 7212(a), inasmuch as he did not "corruptly" obstruct or impede the administration of the Internal Revenue Code.[3] Defense counsel further argued that Marinello must have affirmatively "do[ne] something," "[l]ike file a phony return," to be guilty of this offense. August 6, 2014 Trial Tr. at 55 (App'x 132).

Over Marinello's objection, the district court declined to instruct the jury that it had to unanimously agree on at least one of the eight specified means by which Marinello allegedly violated section 7212(a) to find him guilty under that section. No special verdict form was provided to the jury with respect to this offense. Instead, the district court instructed the jury as to the underlying means contained in Count One as follows:

> [T]he indictment alleges multiple methods in which the crime [of violating section 7212(a)'s omnibus clause] can be committed, but the government does not have to prove all of them for you to return a guilty verdict on this charge. Proof beyond a reasonable doubt of any one of the obstructive acts listed in the indictment is enough. To return a guilty verdict, all 12 of you must agree that at least one of these has been proved.

---

[3] As to the remaining counts, Marinello argued that he was not guilty because the government could not prove he "willfully" failed to file his tax returns. August 6, 2014 Trial Tr. at 50 (App'x 127). *See* 26 U.S.C. § 7203 ("Any person required under this title . . . to make a return . . . who willfully fails to . . . make such return . . . shall, in addition to other penalties provided by law, be guilty of a misdemeanor . . . .").

> However, all of you need not agree that the same one has been proved.

August 11, 2014 Trial Tr. at 471 (App'x 433).

The jury convicted Marinello on all counts.  He then moved for a judgment of acquittal or a new trial under Federal Rules of Criminal Procedure 29 and 33, respectively, which the government opposed.[4]  Marinello argued, *inter alia*, that the phrase "the due administration of this title" in section 7212(a) refers exclusively to pending IRS investigations, and that a defendant may be convicted under the statute only if he knowingly interferes with such an investigation. Employing that construction of the statute, which the Sixth Circuit had previously adopted in *United States v. Kassouf*, 144 F.3d 952 (6th Cir. 1998), Marinello contended that he should be acquitted because there was no evidence that he had become aware of the IRS's investigation until his June 1, 2009, interview with Agent Klimczak, which occurred after the offense conduct alleged in the superseding indictment had already taken place.

The district court declined to construe section 7212(a) that narrowly. Noting that a later panel of the Sixth Circuit had limited *Kassouf* to its facts, and

---

[4] Before the defense rested at trial, Marinello also made a motion pursuant to Rule 29, which was denied by oral order.

12

that other courts had declined to follow the *Kassouf* court's reasoning, the district court concluded that "[k]nowledge of a pending [IRS] investigation is not an essential element of the crime." Decision and Order at 6-7, *United States v. Marinello*, No. 12 Cr. 53S (W.D.N.Y. June 26, 2015) (App'x 549-50) (citing *United States v. Bowman*, 173 F.3d 595, 600 (6th Cir. 1999) and *United States v. Willner*, No. 07 Cr. 183(GEL), 2007 WL 2963711, at *4, 2007 U.S. Dist. LEXIS 75597, at *10-11 (S.D.N.Y. Oct. 11, 2007) (collecting cases)). In the court's view, "[t]he jury was entitled to infer . . . that Marinello acted corruptly to impede or obstruct the due administration of the Internal Revenue laws" by otherwise hindering the collection of taxes due. *Id.* at 6 (App'x 549).

In the defendant's Presentence Investigation Report (the "PSR"), the Probation Office calculated the total tax loss from Marinello's activities as approximately $598,215.53 by applying a percentage-based formula to his gross income from 2005 through 2008. *See* U.S. Sentencing Guidelines Manual (hereinafter, "U.S.S.G.") § 2T1.1(c)(2)(A) (U.S. Sentencing Comm'n 2014) (indicating that this formula should be used "unless a more accurate determination of the tax loss can be made"). The total tax loss resulted in a base offense level of twenty. *See* U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(H)-(I) (specifying, for

offenses involving willful failure to file returns, a base offense level of 20 where

the tax loss is "[m]ore than $400,000" but not more than $1,000,000).  A two-level

enhancement to the base offense level was applied because Marinello's

conviction under Count One implicated an adjustment for obstructing or

impeding the administration of justice.  *See* U.S.S.G. § 3C1.1.  Marinello was also

deemed ineligible for the two-level reduction for acceptance of responsibility.

*See* U.S.S.G. § 3E1.1(a).  In the view of the Probation Office, Marinello had not

clearly demonstrated an acceptance of responsibility for his offense conduct in

part because he continued to decline to accept responsibility for the obstruction

charge and insisted there was a legal basis to contest this issue.  Thus, with a

criminal history category of one and a total offense level of twenty-two,

Marinello's advisory Guidelines range for sentencing was forty-one to fifty-one

months.  The Probation Office also determined that Marinello owed the IRS

$331,348.08 in corporate income taxes and $20,415 in personal income taxes from

2005 to 2008, and recommended that those amounts be imposed by the court's

restitution order.

Marinello filed objections to the findings in the PSR, two of which are

relevant to this appeal.  First, he argued that the tax loss and restitution amounts

were incorrectly calculated. According to Marinello, "a more accurate determination of tax loss c[ould] be made" based on the actual corporate and personal tax returns he ultimately filed, years after the fact, for tax years 2005 through 2008. Objections to the [PSR] and Statement With Respect to Sentencing Factors, dated January 14, 2015, at 2-3 (App'x 514-15) (quoting U.S.S.G. § 2T1.1(c)(2)(A) (emphasis removed)). These returns reflected a tax loss of only $48,890, which would have yielded a base offense level of fourteen instead of twenty. *See* U.S.S.G. § 2T4.1(E). Marinello further asserted that any restitution was also capped at the $48,890 amount.

Second, Marinello urged that the two-level reduction for acceptance of responsibility was applicable.[5] He argued that his conduct merited the reduction because he admitted to keeping poor business records and not paying his taxes; was previously willing to plead to the misdemeanor Counts Two through Nine; and proceeded to trial only to preserve a dispute concerning whether he could be held criminally liable under the section 7212(a) obstruction charge.

---

[5] Marinello did not argue that he was eligible for an additional one-level reduction under U.S.S.G. § 3E1.1(b), nor does he make any argument with respect to this provision on appeal.

In response, the government asserted that there were a variety of inaccuracies in Marinello's proffered tax returns (such as using an incorrect filing status and improperly claiming his mother as a dependent), which rendered them unreliable for purposes of calculating either an alternative tax loss or restitution amount. The government further contended that the two-level reduction for acceptance of responsibility was inapplicable because Marinello was evasive during his discussions with Agent Klimczak at the June 1, 2009, interview, disputed that he acted with the requisite *mens rea* to be convicted under Count One, and stated at the time the PSR was prepared that he did not accept responsibility for the obstruction charge.

In his reply brief, Marinello did not address any of the alleged inaccuracies the government highlighted in his tax returns. He continued to argue, however, that he deserved the reduction for acceptance of responsibility.

During Marinello's sentencing proceedings, the district court concluded that Marinello's alternative calculation of the tax loss and restitution at issue could not be used in light of the discrepancies the government identified in his proffered tax returns. The court therefore adopted the Probation Office's calculations of those figures and denied Marinello's first objection. His second

objection concerning the acceptance of responsibility reduction was also denied based on the court's view that his case was not one of the "rare" situations specified in the Guidelines where the reduction is appropriate even though the defendant exercised his constitutional right to proceed to trial.  Transcript of Sentencing ("Sentencing Tr."), July 1, 2015, at 12 (App'x 566) (applying U.S.S.G. § 3E1.1 cmt. 2).

Marinello addressed the court prior to sentencing.  He stated that he realized he had made a mistake, but that he did not accept the over half million dollar tax loss calculation by "a probation officer who probably without using an adding machine can't add a column of numbers together." *Id.* at 19 (App'x 573).  After the district court observed that Marinello "expressed no remorse whatsoever," Marinello responded:

> I have complete remorse.  I have absolutely complete
> remorse.  I was overwhelmed by the job.  I was
> overwhelmed by everything.  Business went—turned
> south.  And I tried to keep the company afloat.

> I'm 69 years of age.  I should be retired, and I'm
> working every day of the week.  Every month the [IRS]
> gets a check.

*Id.* at 20 (App'x 574). The government underscored that the defendant's comments demonstrated that he clearly did not accept responsibility for his actions.

Adopting the criminal history category, total offense level, and Guidelines range recommended by the Probation Office, the district court imposed a below-Guidelines sentence of thirty-six months' imprisonment and one year of supervised release. The district court also imposed restitution in the amount of $351,763.08, as recommended by the Probation Office. Following the entry of an amended judgment, this timely appeal followed.

## DISCUSSION

Marinello makes three arguments on appeal. First, he urges us to adopt the Sixth Circuit's interpretation of the phrase "the due administration of this title" in section 7212(a), as set forth in *United States v. Kassouf*, 144 F.3d 952 (6th Cir. 1998), which requires the prosecution to establish the defendant's knowledge of a pending IRS action[6] in order to support a conviction under the omnibus clause. Marinello seeks reversal of his conviction on Count One and dismissal of

---

[6] Marinello's argument presumably encompasses any pending IRS action and not only an IRS investigation or proceeding concerning the defendant charged with the omnibus clause violation, although he does not clarify this point in his appellate briefs.

that count from the superseding indictment because there is no evidence that he knew of the IRS's investigation while engaging in the offense conduct alleged.

Second, Marinello contends that a violation of the omnibus clause must be premised on an underlying affirmative act, not on an omission.  Because the district court did not charge the jury with the unanimity instruction he requested or provide it with the special verdict form he suggested, he maintains that his conviction on Count One could have been improperly based on either of the two omissions alleged in the indictment: failure to keep Express Courier's books and records, and failure to provide complete records of personal and corporate income to his accountant.  He seeks reversal and remand for a new trial on that ground if his conviction under section 7212(a) is not otherwise vacated.

Third, Marinello argues that vacatur and remand for resentencing is required because the district court procedurally erred in imposing his sentence. In his view, the district court impermissibly rejected his proffered tax returns as a measure of the tax loss and restitution amounts without further inquiry by way of an evidentiary hearing or supplemental briefing.  He also asserts that he was entitled to the two-level reduction to his base offense level for acceptance of

responsibility because he offered to plead guilty to the eight counts of willful failure to file tax returns.

## I.   Standard of Review

A district court's interpretation of a federal criminal statute is a question of law subject to *de novo* review by the Court of Appeals. *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012). A defendant's challenge to a jury instruction is also reviewed *de novo*. *United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010). We will conclude that the district court committed reversible error if its instruction "either fails to adequately inform the jury of the law, or misleads the jury as to the correct legal standard." *Id.* (quoting *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006)).

We review the procedural reasonableness of a sentence "under a 'deferential abuse-of-discretion standard.'" *United States v. Jesurum*, 819 F.3d 667, 670 (2d Cir. 2016) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). A district court commits procedural error if, as relevant here, it "fails to calculate (or improperly calculates) the Sentencing Guidelines range" or "selects a sentence based on clearly erroneous facts." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (quoting *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012)). Decisions

as to the procedures used to resolve sentencing disputes, including disputes

concerning an order of restitution, are reviewed for abuse of discretion, *United*

*States v. Maurer*, 226 F.3d 150, 151-52 (2d Cir. 2000) (per curiam) (citing *United*

*States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996)), and "are within the district

court's discretion so long as the defendant is given an adequate opportunity to

present his position," *Sabhnani*, 599 F.3d at 257-58.

**II.    A Pending IRS Action and a Defendant's Knowledge of That Action Are Not Offense Elements Under 26 U.S.C. § 7212(a)'s Omnibus Clause**

Section 7212(a) criminalizes certain "[a]ttempts to interfere with [the]

administration of internal revenue laws."  Under section 7212(a),

> [w]hoever [1] corruptly or by force or threats of force
> (including any threatening letter or communication)
> endeavors to intimidate or impede any officer or
> employee of the United States acting in an official
> capacity under this title, *or* [2] *in any other way corruptly*
> *or by force or threats of force (including any threatening*
> *letter or communication) obstructs or impedes, or*
> *endeavors to obstruct or impede, the due administration of*
> *this title*, shall, upon conviction thereof, be [fined or
> imprisoned, or both].

26 U.S.C. § 7212(a) (emphases added).  The first clause addresses conduct

specifically directed toward federal officers or employees in the discharge of

their duties under Title 26 of the United States Code—the Internal Revenue

Code.  The second clause, the "omnibus clause," is a catch-all provision that criminalizes "any other way" of corruptly obstructing or impeding the due administration of the Internal Revenue Code.  The term "corruptly" within the meaning of this section encompasses conduct that has "the intent to secure an unlawful advantage or benefit either for one's self or for another."  *United States v. Parse*, 789 F.3d 83, 121 (2d Cir. 2015) (quoting *United States v. Kelly*, 147 F.3d 172, 177 (2d Cir. 1998)).

Marinello asks that we conclude, as the Sixth Circuit did in *Kassouf*, that the statutory phrase "the due administration of this title" under the omnibus clause refers exclusively to pending IRS investigations or proceedings, of which a defendant must have knowledge in order to corruptly obstruct or impede them.  For the reasons that follow, we decline to adopt this construction.

In *Kassouf*, the defendant was charged with corruptly endeavoring to obstruct and impede the due administration of the tax laws, in violation of section 7212(a).  144 F.3d at 953.  He allegedly failed to maintain partnership books and records, transferred business funds into various bank accounts for personal expenditures, and filed false tax returns that did not disclose substantial assets.  *Id.* at 953 & n.1.  The district court granted the defendant's motion to

dismiss the section 7212(a) count from the indictment for failure to state an offense, finding that the government had not alleged as elements of the crime that the defendant had knowledge of a pending IRS proceeding or investigation. *See id.* at 954. On appeal, the Sixth Circuit affirmed, agreeing with the district court that "due administration of the Title requires some pending IRS action"—such as "subpoenas, audits or criminal tax investigations"—"of which the defendant was aware." *Id.* at 957 & n.2.

The Sixth Circuit based its conclusion on a comparison of the omnibus clause with another statute, 18 U.S.C. § 1503. *See id.* at 957. Section 1503, entitled "Influencing or injuring officer or juror generally," provides in relevant part:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, *or corruptly* or by threats or force, or by any threatening letter or communication, *influences, obstructs, or impedes, or*

*endeavors to influence, obstruct, or impede, the due administration of justice*, shall be punished as provided in subsection (b).

18 U.S.C. § 1503(a) (emphasis added). Relying on the similarities between the texts of section 1503(a) and section 7212(a), the Sixth Circuit consulted case law interpreting section 1503 for guidance on how to construe "the due administration of this title" under section 7212(a). *See Kassouf*, 147 F.3d at 956-58. In particular, the Sixth Circuit looked to *United States v. Aguilar*, 515 U.S. 593 (1995), a decision addressing the scope of offense conduct covered by section 1503(a)'s broad prohibition on corrupt efforts to influence, obstruct, or impede the due administration of justice, *see id.* at 598-600. In *Aguilar*, the Supreme Court limited this provision's reach by imposing "a 'nexus' requirement": To be found guilty of this offense, the "action taken by the accused must be with an intent to influence judicial or grand jury proceedings." *Id.* at 599; *see also id.* (describing the nexus requirement as "a relationship in time, causation, or logic" between the defendant's offense conduct and a judicial proceeding). In so deciding, the Supreme Court appeared to assume that "the due administration of justice" under section 1503(a) only applied to pending grand jury or judicial proceedings,

24

in line with the way courts have previously read this statutory phrase.[7] *See id.* The Supreme Court's decision was motivated by a concern that section 1503(a) could sweep too broadly:  Not just "*any* act, done with the intent to obstruct the due administration of justice, is sufficient to impose criminal liability"; otherwise, the connection between a defendant's corrupt endeavors and a judicial proceeding could be too attenuated.  *See id.* at 602 (emphasis in original) (ellipsis and internal quotation marks removed).  Instead, in order to be convicted of corruptly interfering with the due administration of justice under section 1503(a), a defendant must be aware that his conduct is "likely to affect the judicial proceeding." *Id.* at 599.

Deeming *Aguilar*'s analysis of section 1503(a) to be instructive, including the Supreme Court's implicit adoption of the longstanding reading of "the due administration of justice,"[8] the Sixth Circuit interpreted by analogy "the due administration of this title" under section 7212(a) to require, as offense elements,

---

[7] *See, e.g.*, *United States v. Bashaw*, 982 F.2d 168, 170 (6th Cir. 1992) ("Because section 1503 is intended to protect the administration of justice in federal court and those participating therein, due administration of justice has been interpreted as extending only to pending judicial proceedings." (internal quotation marks and citation omitted)).

[8] The independent meaning of "the due administration of justice," however, was never at issue in *Aguilar*—in fact, the defendant there was charged with "corruptly endeavor[ing] to influence, obstruct, and impede [a] *grand jury investigation*." *See id.* at 598-99 (emphasis added).

that a defendant (1) have knowledge of (2) "some pending IRS action." *Kassouf*, 144 F.3d at 956-57. Noting again the similar language contained in the two statutes, the court used a canon of construction to find that this similarity permitted it to infer that Congress meant for section 7212(a) to apply to analogous situations. *See id.* at 957-58 (applying the "canon of statutory construction that courts will presume that Congress knew of the prevailing law when it enacted the statute" at issue). The court also expressed its concern that, were the omnibus clause not limited to pending IRS actions, a defendant could be subject to undefined "liability for conduct which was legal (such as failure to maintain records) and occurred long before an IRS audit, or even a tax return was filed." *Id.* at 957; *see also id.* at 958 ("[I]t would be highly speculative to find conduct such as the destruction of records, which might or might not be needed, in an audit which might or might not ever occur, is sufficient to make out an omnibus clause violation." (citation omitted)). The court then affirmed the dismissal of the disputed count of the indictment on the basis of the rule it had enunciated.[9] *Id.* at 960.

---

[9] Judge Daughtrey dissented from the majority's conclusion in this regard, noting that no other circuit at the time had required that a defendant knowingly obstruct or impede

26

We think the Sixth Circuit's analogy is inapposite.  To begin with, the text of section 1503(a) is distinguishable from section 7212(a) in at least two ways. First, section 1503(a)'s statutory language focuses principally on grand jury or judicial proceedings.  Indeed, its prohibition of corrupt endeavors to influence, obstruct, or impede the due administration of justice "follows a long list of specific prohibitions of conduct that interferes with actual judicial proceedings," *United States v. Wood*, 384 F. App'x 698, 704 (10th Cir. 2010), *cert. denied*, 562 U.S. 1225 (2011); *accord Willner*, 2007 WL 2963711, at *4, 2007 U.S. Dist. LEXIS 75597, at *11; *see also United States v. Sorensen*, 801 F.3d 1217, 1232 (10th Cir. 2015) (endorsing the reasoning in *Wood*), *cert. denied*, 136 S. Ct. 1163 (2016).  This list— which specifically mentions jurors, officers of the court, magistrate judges, and

---

a pending IRS action in order to be convicted under section 7212(a)'s omnibus clause. *Kassouf*, 144 F.3d at 960-61 (Daughtrey, *J.*, dissenting in part).

Shortly after *Kassouf* was decided, another panel of the Sixth Circuit suggested its disapproval of this rule by concluding that "*Kassouf* must be limited to its precise holding and facts."  *See Bowman*, 173 F.3d at 600; *see also id.* at 599-600 (deciding that "an individual's deliberate filing of false forms with the IRS specifically for the purpose of causing the IRS to initiate action against a taxpayer is encompassed within § 7212(a)'s proscribed conduct," even though "no IRS proceeding or investigation was underway" when the defendant engaged in the underlying offense conduct).  However, the court has more recently stated to the contrary that the rule articulated in *Kassouf* remains the law of the Sixth Circuit.  *See United States v. Miner*, 774 F.3d 336, 345 (6th Cir. 2014) ("[P]ost-*Kassouf* and post-*Bowman*, a defendant may not be convicted under the omnibus clause unless he is 'acting in response to some pending IRS action of which [he is] aware.'" (second brackets in original) (quoting *United States v. McBride*, 362 F.3d 360, 372 (6th Cir. 2004))), *cert. denied*, 135 S. Ct. 2060 (2015).

committing magistrates, as well as "examination[s] or other proceeding[s]" before a magistrate judge or committing magistrate, "verdict[s]," and "indictment[s]"— supports a reading that tethers the "due administration of justice" to actual grand jury or judicial proceedings.  *See* 18 U.S.C. § 1503(a).  By contrast, section 7212(a) does not contain any such reference to IRS actions, investigations, or proceedings that would support analogizing it to section 1503(a).  Instead, the first part of section 7212(a) refers broadly to attempts to interfere with officers or employees "acting in an official capacity" under the tax code, 26 U.S.C. § 7212(a), which suggests that the omnibus provision similarly applies to the full range of these individuals' official duties.

Second, and most apparent, the statutes employ different statutory phrases: "the due administration of *justice*," 18 U.S.C. § 1503(a) (emphasis added), and "the due administration of *this title*," 26 U.S.C. § 7212(a) (emphasis added).  This difference indicates that the statutes carry different meanings.  *See Kassouf*, 144 F.3d at 960 (Daughtrey, *J.*, dissenting in part) ("[I]f Congress wished 26 U.S.C. § 7212(a) to be interpreted in an identical fashion, identical language would have been inserted into that statute.").  The plain language of section 7212(a)'s omnibus clause "prohibits any effort to obstruct the administration of *the tax code*,

not merely of investigations and proceedings conducted by the tax authorities."

*Willner*, 2007 WL 2963711, at \*5, 2007 U.S. Dist. LEXIS 75597, at \*12 (emphasis in original).  As the Sixth Circuit noted in *Kassouf*, the administration of the Internal Revenue Code "encompass[es] a vast range of activities": "mailing out internal revenue forms; answering taxpayers' inquiries; receiving, processing, recording and maintaining tax returns, payments and other taxpayers['] submissions; as well as monitoring taxpayers' compliance with their obligations."  144 F.3d at 956; *see also Sorensen*, 801 F.3d at 1232 ("[T]he IRS duly administers the internal-revenue laws . . . [by] carrying out its lawful functions to ascertain income[ and to] compute, assess, and collect income taxes[.]" (internal quotation marks and citation omitted)).  In light of these responsibilities, it is apparent that "the IRS does duly administer the tax laws even before initiating a proceeding."  *Sorensen*, 801 F.3d at 1232; *see Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1129 (2015) ("[T]he Federal Tax Code has long treated information gathering as a phase of tax administration procedure that occurs before assessment, levy, or collection.").  Thus, it is possible to violate section 7212(a) by corruptly obstructing or impeding the due administration of the Internal Revenue Code "without an

awareness of a particular [IRS] action or investigation" (for instance, "by thwarting the annual reporting of income").  *Wood*, 384 F. App'x at 704.

Section 1503's legislative history also makes clear that Congress intended "the due administration of justice" to refer only to grand jury or judicial proceedings; however, no comparable legislative history points to interpreting "the due administration of this title" under section 7212(a) in a similar manner.  A predecessor version of section 1503 criminalized "corrupt[] endeavors to influence, intimidate, or impede any witness or officer *in any court of the United States* in the discharge of his duty, or corrupt[] . . . endeavors to obstruct or impede[] the due administration of justice *therein*."  *See Pettibone v. United States*, 148 U.S. 197, 202 (1893) (emphases added) (quoting Rev. Stat., Tit. LXX, ch. 4, § 5399 (2d ed. 1878)); *see also Aguilar*, 515 U.S. at 599 (noting that *Pettibone* "constru[ed] the predecessor statute to § 1503").  Although the word "therein" has since been removed from section 1503(a), there is no indication by Congress that, in so doing, it intended to fundamentally alter the statute's meaning.  *See Willner*, 2007 WL 2963711, at *4, 2007 U.S. Dist. LEXIS 75597, at *12 ("Nothing about the history of revision of [section 1503] . . . indicates that the elimination of the last word ['therein'] was intended to affect the meaning.").

In addition to what we think is a mistaken analogy to section 1503(a), we find unpersuasive the vagueness or overbreadth concern identified in *Kassouf* in support of that court's construction of the omnibus clause. The Sixth Circuit narrowly interpreted "the due administration of this title" under section 7212(a) in part based on a concern that, were proof of a defendant's awareness of a pending IRS action not otherwise required, a defendant could be subject to punishment for engaging in lawful conduct. *See Kassouf*, 144 F.3d at 957-58. But we have already rejected a similar challenge to section 7212(a) on grounds of vagueness and overbreadth. *See Kelly*, 147 F.3d at 176 (agreeing with five other circuits concluding that the use of the term "corruptly" in section 7212(a) does not render this provision unconstitutionally vague or overbroad (citing *United States v. Brennick*, 908 F. Supp. 1004, 1010-13 (D. Mass. 1995))). Moreover, other courts, including the Sixth Circuit, have decided that section 7212(a)'s "*mens rea* requirement" sufficiently "restricts the omnibus clause's reach only to conduct that is committed 'corruptly.'" *United States v. Miner*, 774 F.3d 336, 347 (6th Cir. 2014) (collecting cases), *cert. denied*, 135 S. Ct. 2060 (2015).[10]

---

[10] To the extent *Kassouf* based its vagueness or overbreadth concern on the Supreme Court's analysis in *Aguilar*, we note that the reliance is likely misplaced. In fashioning the nexus requirement previously discussed, the Supreme Court suggested that its

31

For those reasons, we decline Marinello's invitation to adopt the *Kassouf* rule. Instead, we join three of our sister circuits in concluding that section 7212(a)'s omnibus clause criminalizes corrupt interference with an official effort to administer the tax code, and not merely a known IRS investigation. *See Sorensen*, 801 F.3d at 1232 (disagreeing with *Kassouf* because section 1503(a) and section 7212(a) "are [in]sufficiently similar to apply *Aguilar*'s reasoning to § 7212(a)"); *United States v. Floyd*, 740 F.3d 22, 32 & n.4 (1st Cir.) (determining that "[a] conviction for violation of section 7212(a) does not require proof of either a tax deficiency or an ongoing audit," and rejecting *Kassouf* (citations omitted)), *cert. denied sub nom. Dion v. United States*, 135 S. Ct. 124 (2014); *United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir. 2005) (stating that "the government need not

interpretation of the term "corruptly" under section 1503(a) adequately addressed any potential problems of overbreadth, inasmuch as a defendant must be aware that his conduct is "likely to affect the judicial proceeding." *See* 515 U.S. at 599; *see also id.* at 602 (concluding that, "if [a man] knew of a pending investigation and lied to his wife about his whereabouts at the time of the crime, thinking that an FBI agent might decide to interview her and that she might in turn be influenced in her statement to the agent by her husband's false account of his whereabouts," the husband could not be convicted under section 1503 because his knowledge of the likely effect on a judicial proceeding is unclear). By raising the specter that the "*due administration*" of the tax code under section 7212(a) could be too vague or overbroad, however, *Kassouf* misconstrues *Aguilar*'s focus on the *mens rea* requirement ("corruptly") as also encompassing a focus on the "due administration" language. We do not read *Aguilar* as expressing any concern regarding, much less tying its holding to, the "due administration" language in section 1503(a).

prove that the defendant was aware of an ongoing tax investigation to obtain a conviction under § 7212(a)"), *cert. denied*, 547 U.S. 1132 (2006).[11]  Notably, although we have not explicitly adopted this rule in any previous opinion, we have implicitly applied it by affirming convictions under section 7212(a)'s omnibus clause without discussion of the defendant's awareness of a pending IRS proceeding.  *See United States v. McLeod*, 251 F.3d 78, 80 (2d Cir. 2001) (affirming sentence imposed where the defendant helped his clients falsify tax returns), *cert. denied*, 534 U.S. 935 (2001); *Kelly*, 147 F.3d at 174-75 (affirming the defendant's conviction for providing a false agreement to the tax authorities to substantiate a deduction on his tax return).

Our conclusion is consistent with at least two other sources.  First, in the body of case law that developed within the forty-four years that elapsed between section 7212's enactment in 1954[12] and *Kassouf*'s issuance in 1998, the government assures us (and we have found no reason to doubt) that no court had limited the

---

[11] In addition to the First, Ninth, and Tenth Circuits, the Eleventh Circuit, in a decision that predates *Kassouf*, upheld an attorney's conviction under section 7212(a)'s omnibus clause for creating a corporation to "disguise the character of [a client's] illegally earned income and repatriate it," even where the attorney had no knowledge that his client was engaged in a "sting operation" with the government against him.  *See United States v. Popkin*, 943 F.2d 1535, 1536-37, 1541 (11th Cir. 1991), *cert. denied*, 503 U.S. 1004 (1992).

[12] *See* Act of Aug. 16, 1954, ch. 736, 68A Stat. 855.

omnibus clause's application to the corrupt obstruction or impediment of a known and pending IRS action. *See* Appellee's Br. at 19. To the contrary, contemporary model jury instructions for use outside of the Sixth Circuit do not include these criteria as elements of the offense. *See* 3 Leonard B. Sand et al., *Modern Federal Jury Instructions: Criminal* ¶ 59.05, Instruction 59-32 & cmt. (2016) (containing pattern instructions or formulations for a violation of section 7212(a)'s omnibus clause in the First, Seventh, Tenth, and Eleventh Circuits).

Second, the Department of Justice's internal tax division policy states that the omnibus clause may be used "to prosecute a person who, *prior to any audit or investigation*, engaged in large-scale obstructive conduct involving the tax liability of third parties." U.S. Dep't of Justice, *Criminal Tax Manual* § 17.03 (2012 ed.), https://www.justice.gov/sites/default/files/tax/legacy/2013/05/14/ CTM%20Chapter%2017.pdf (last visited August 1, 2016) (emphasis added), *archived at* https://perma.cc/QWW4-DTJL. Pursuant to this policy, a defendant may be charged under the omnibus clause in the absence of a pending IRS action. *See also id.* § 17.04 ("To establish a Section 7212(a) omnibus clause violation, the government must prove beyond a reasonable doubt that the defendant in any

way (1) corruptly (2) endeavored (3) to obstruct or impede the due administration of the Internal Revenue Code.").

Because we conclude that, under section 7212(a), "the due administration of this title" is not limited to a pending IRS investigation or proceeding of which the defendant had knowledge, we reject Marinello's first argument as without merit.[13]

---

[13] In his reply brief, Marinello also raises for the first time an argument that the enactment of a statute in 2002 prohibiting the knowing destruction, alteration, or falsification of records "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , *or in relation to or contemplation of any such matter*," 18 U.S.C. § 1519 (emphasis added), demonstrates that Congress employs specific language when it prohibits conduct "not predicated upon the existence of any federal action or proceeding," Appellant's Reply Br. at 9. Marinello points to the absence of similar language in 26 U.S.C. § 7212(a) prohibiting corrupt obstruction or impediment "in relation to or contemplation of" an IRS action—which Congress did not add to section 7212(a) in 2002—as support for his theory that a defendant's knowledge of such a pending action is required to violate the omnibus clause. Ordinarily, we do not address an argument that the district court has not previously considered. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) (*per curiam*); *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005). Even if we did so here, however, we have found no authority that supports Marinello's attempt to create offense elements by contrasting 18 U.S.C. § 1519 with 26 U.S.C. § 7212(a). Moreover, "Congressional inaction," such as the lack of retroactive amendment to section 7212(a) in light of section 1519, "lacks 'persuasive significance' because 'several equally tenable inferences' may be drawn from such inaction." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (quoting *United States v. Wise*, 370 U.S. 405, 411 (1962)).

**III.    An Omnibus Clause Violation May Be Premised on an Omission**

Marinello's next argument proceeds in two steps.  First, citing *Kelly*, Marinello asserts that an omission cannot form the basis of a conviction under the omnibus clause.  Second, to ensure that he was not improperly convicted for a failure to act, he contends that the jury should have been instructed that it was required to unanimously agree on at least one of the underlying means alleged in Count One (two of which pertained to omissions) and to render a special verdict specifying which of those underlying means it found were met.[14]

---

[14] Marinello further argues in passing that Count One falsely states that "the defendant's accountant" was not provided with complete and accurate records for tax purposes, *see* Superseding Indictment at 1 (App'x 75), because he maintains that no professional relationship existed between him and Wiegley.  The record shows that Marinello consulted with Wiegley, although the two did not sign a contract for accounting services.  While the superseding indictment's description of Wiegley could have been more precise, we conclude that Marinello's argument fails for at least two reasons.  First, assuming that the jury had relied on the allegations pertaining to "the defendant's accountant" in order to convict under Count One, its verdict demonstrates that, based on the evidence introduced at trial, it agreed with the superseding indictment's description of Wiegley as his accountant.  Thus, the jury resolved the instant factual dispute in the government's favor.  Moreover, if and to the extent that the superseding indictment's description of Wiegley was erroneous, that error is harmless. The jury clearly did not convict Marinello on Count One based solely on his offense conduct in connection with his consultations with Wiegley, whether or not Wiegley was his accountant.  Marinello's counsel effectively conceded at trial that Marinello engaged in all of the other means alleged under Count One, *see* August 6, 2014 Trial Tr. at 51-56 (App'x 128-33), and counsel only disputed whether Marinello performed any of the acts or omissions alleged with the requisite corrupt intent.  The jury's verdict of conviction demonstrates that it concluded that the government proved such corrupt intent with respect to the other conduct alleged in the indictment, in which Marinello concedes he

In *Kelly*, we described section 7212(a)'s omnibus clause as "render[ing] criminal 'any other' action which serves to obstruct or impede the due administration of the revenue laws." 147 F.3d at 175 (quoting 26 U.S.C. § 7212(a)). From this statement, Marinello attempts to extract the principle that a violation of the omnibus clause must be predicated on a defendant's affirmative "action," and not an omission. But *Kelly* did not cabin offense conduct under the omnibus clause in this manner; section 7212(a) broadly prohibits corruptly obstructing or impeding, or endeavoring to obstruct or impede, the due administration of the tax laws "in any other way." *See* 26 U.S.C. § 7212(a). We do not see how a defendant could escape criminal liability under the omnibus clause for a corrupt omission that is designed to delay the IRS in the administration of its duties merely because the offense conduct involved an omission. *Cf. Kelly*, 147 F.3d at 177 (approving a jury instruction defining the term "endeavors" under section 7212(a) to mean "to knowingly and intentionally act *or* to knowingly and intentionally make any effort which has a reasonable tendency to bring about the desired result" (emphasis added)). For example, a defendant surely could be charged under section 7212(a) for knowingly failing to provide the IRS with

engaged. Thus, whether or not the alleged omission describing Wiegley as Marinello's accountant was properly before the jury is immaterial.

materials that it requests, or, as in Marinello's case, for failing to document or

provide a proper accounting of business income and expenses.[15]  While

apparently not as common as prosecutions based on one or more affirmative

acts, we are aware of several cases in which the government has prosecuted on

the basis of an omission as a means of violating section 7212(a)'s omnibus

clause.[16]

      We conclude, then, that an omission may be a means by which a defendant

corruptly obstructs or impedes the due administration of the Internal Revenue

Code under section 7212(a).  And it follows that Marinello's second argument on

---

[15] We nonetheless recognize that the scope of omissions on which an omnibus clause violation could be based is not limitless.  *See Wood*, 384 F. App'x at 708 (suggesting it is "a questionable proposition" that a defendant's mere failure to file tax returns could constitute a violation of the omnibus clause, particularly because the "willful failure to file tax returns is addressed in a different section of the Internal Revenue Code, 26 U.S.C. § 7203").  Whatever those limits may be, the omissions at issue here do not exceed them.

[16] *See, e.g., Kassouf*, 144 F.3d at 953 n.1 (alleging the defendant "failed to maintain or cause to be maintained partnership books and records"; "failed to report or cause to be reported substantial amounts of interest earned on [certain] bank accounts"; and transferred property "without making or causing to be made any record of that sale or transfer"); *United States v. Armstrong*, 974 F. Supp. 528, 531 (E.D. Va. 1997) (alleging the defendant "provided false information to, and withheld material information from, his tax return preparer with regard to his travel expense reimbursements and income"); *United States v. Bezmalinovic*, No. S3 96 CR 97 MGC, 1996 WL 737037, at *2, 1996 U.S. Dist. LEXIS 18976, at *5-6 (S.D.N.Y. Dec. 26, 1996) (alleging the defendant failed to report salary payments to certain employees "in any IRS Form W-2" or "to remit to the IRS the [payroll and unemployment] tax[es] due and owing").

appeal is also without merit because the jury could have relied on his alleged failure to keep Express Courier's books and records, or to provide Wiegley with complete and accurate information on his personal and corporate income, as a basis for its conviction on Count One. No unanimity instruction or special verdict form was therefore required in order to distinguish the jury's assessment of the underlying affirmative actions as opposed to the omissions alleged under this count, because there is no requirement under the statute to make certain that, if Marinello were convicted, the conviction was based solely on an affirmative action and not an omission.

Marinello has not raised in this Court the issue of whether a unanimity instruction or special verdict form is required for any other reason during trials arising out of alleged section 7212(a) omnibus clause violations, and we therefore do not decide or offer an opinion with respect to any such argument. His pre-trial filings sought an instruction that the jury unanimously agree on at least one of the eight means alleged in order to convict, as well as a special verdict form requiring that the jury specify its findings on each of those means. However, he does not repeat arguments concerning those requests on appeal. *Cf. JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005)

("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief.").[17]

## IV. The District Court Did Not Procedurally Err In Determining Marinello's Sentence

Finally, Marinello's remaining arguments—that the district court should have conducted further inquiries to calculate the tax loss and restitution amounts, and should have applied the two-level reduction for acceptance of responsibility—do not convince us that the district court committed procedural error meriting resentencing.

Marinello argues that the district court's "cursory review" of his proffered tax returns in arriving at a tax loss of $598,215.53 and a total restitution amount

---

[17] We note nevertheless that while the Ninth Circuit does not appear to object to the use of a unanimity instruction in this context, *see United States v. Murphy*, 824 F.3d 1197, 1201, 1206 (9th Cir. 2016), at least two courts (the Tenth Circuit and a district court in Washington D.C.) have ruled that the instruction is erroneous. *See Sorensen*, 801 F.3d at 1237 (concluding that the district court erred by requiring unanimity on one or more of the listed means, in part because the instruction "ignored the indictment's language charging that [the defendant] violated § 7212(a) 'by the following means, *among others* . . . .'" (emphasis in original)); *United States v. Adams*, 150 F. Supp. 3d 32, 37-38 (D.D.C. 2015) (agreeing with *Sorensen*'s conclusion, and quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999) for the proposition that "[a] federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime").

of $351,763.08, without conducting an evidentiary hearing or receiving supplemental submissions, "was unfair and violated his due process rights." *See* Appellant's Br. at 29.  But a district court "is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes. . . .  All that is required is that the court afford the defendant some opportunity to rebut the [g]overnment's allegations." *Sabhnani*, 599 F.3d at 258 (quoting *Maurer*, 266 F.3d at 151-52).  Here, Marinello challenged the Probation Office's calculations in his objections to the PSR, attaching his personal and corporate tax returns in an effort to show that $48,890 was a more appropriate tax loss and restitution amount.  He did not, however, respond on reply to the many inaccuracies the government identified in these returns.  The district court considered his objection and, crediting the government's arguments, ultimately rejected it before imposing sentence. Because Marinello was afforded "some opportunity" to dispute the tax loss and restitution amounts, and to respond to the government's arguments with respect to his tax returns, the district court did not abuse its discretion by not obtaining additional information regarding this issue.  *See id.*

41

Nor can we say that the district court abused its discretion by denying Marinello a two-level decrease to his base offense level because he did not "clearly demonstrate[] acceptance of responsibility for his offense," a decision to which we accord "great deference on review," *see* U.S.S.G. § 3E1.1(a) & cmt. 5. Marinello's sole relevant contention on appeal is that his "offer[] to plead guilty to the failures to file income tax returns" "should have received some consideration in sentencing." Appellant's Br. at 30. But an offer to plead guilty to some counts of an indictment provides limited evidence of acceptance of responsibility; even a defendant who pleads guilty is not guaranteed to receive the adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 cmt. 3.

Moreover, we agree with the district court's conclusion that Marinello's case is not one of the "rare situations" contemplated in the Guidelines in which a defendant "may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial"—for instance, by "go[ing] to trial to assert and preserve issues that do not relate to factual guilt." *See id.* cmt. 2. Marinello proceeded to trial on the theory that he lacked the requisite *mens rea* to commit the omnibus clause violation, an issue of factual guilt. It was only in post-trial briefing that Marinello's legal argument

pertaining to the elements of an omnibus clause violation and the *Kassouf* rule was first raised. In our view, it was reasonable for the district court to deny a reduction for acceptance of responsibility in these circumstances. *See id.* (stating the acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse"); *cf. United States v. Melot*, 732 F.3d 1234, 1244-45 (10th Cir. 2013) (concluding that the district court clearly erred in applying the acceptance of responsibility reduction where the defendant went to trial "so he could challenge the *mens rea* element of the crimes charged in the indictment," including a violation of section 7212(a)'s omnibus clause).[18]

---

[18] Three additional considerations under U.S.S.G. § 3E1.1 bolster the district court's conclusion on this score. First, "prior to adjudication of [his] guilt," no "voluntary restitution payment" to the IRS had been made. *See id.* cmt. 1(C). Second, Marinello did not timely manifest acceptance of responsibility: He stated that he "never got around" to paying his taxes instead of admitting to his guilt during his interview with Agent Klimczak, August 6, 2014 Trial Tr. at 172 (App'x 181), and he persisted in denying responsibility for the section 7212(a) count while his PSR was being prepared. *See* U.S.S.G. § 3E1.1 cmt. 1(H) (providing that "timeliness" is a consideration for determining whether a defendant has accepted responsibility). Even during the sentencing proceedings, he told the court that the Probation Office "c[ould]n't add a column of numbers together" to calculate the total tax loss, and blamed his misconduct on feeling "overwhelmed by the job." Sentencing Tr. at 19-20 (App'x 573-74). Third, the district court's application of a U.S.S.G. § 3C1.1 enhancement for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal

43

We therefore conclude that the district court did not commit procedural error by using the manner of calculating the tax loss and restitution amounts that it did, or by deciding not to apply a two-level reduction to Marinello's base offense level for acceptance of responsibility.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

conduct," *see* U.S.S.G. § 3E1.1 cmt. 4.  Marinello offers no reason to conclude that this is an "extraordinary case[]" warranting "adjustments under both §§ 3C1.1 and 3E1.1." *See id.*